## TAYLOR *v.* BLILEY.

A partner who entered the business under contract that in consideration of a sum (about half the value) which he paid at once, and of another sum to be paid in a year, he should have a half undivided interest in property theretofore owned by the other partner, the title to the same to remain in the other partner until the balance of money should be paid, had sufficient interest in the property delivered to him to authorize him to maintain a petition for injunction and receiver against the other partner, the time payment not being due, and the partnership having gone into operation.
November 10, 1890.

Partnership. Injunction and receiver. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term (September 6), 1890.

Taylor, on August 16, 1890, by his petition made these allegations : On January 22, 1890, he and Bliley entered into a written agreement attached. Bliley had been in the business of an undertaker, and had an outfit used in carrying on the business, which he valued at $2,594.30. He contracted to sell to petitioner a half-interest in this property for $1,267.45, the title to remain in Bliley until the purchase money was paid. Petitioner paid in cash $600, and gave his note for $667.45. The firm entered at once upon the business, which progressed very slowly, the income from it being very small, so that since the partnership was formed petitioner has received from the business only $22. Feeling that the business was dull and that there was no likelihood of a support from it, he applied to Bliley three months ago to dissolve the partnership, proposing that if Bliley would let him have back his $600 and the note, he would give him all his time and labor up to that time, but Bliley refused to entertain the proposition; the petitioner then proposed to take $350 and the note and leave the business, but this Bliley refused to do ; and so petitioner gave Bliley notice that he would in three months dissolve the partnership. The three months have elapsed, but Bliley seems more inexorable than ever, keeping the books locked up and concealed from petitioner, refusing to consult with him about the business or talk about his interest in the matter, and in every way trying to ignore him. Bliley is morose and grum and at times insulting to petitioner, and considers the business as his exclusively. If there were more profits in the business than would be indicated by the amount above stated as having been paid petitioner, he has no way of ascertaining it, as he is

almost entirely excluded from any knowledge of the
business. The firm has been sued for the rent of the
building it occupies, and, indeed, things seem to be in
such a strait that it is necessary the business should
be in some way terminated. Even as late as the day
before the petition was sworn to, Bliley locked up the
house and went away, leaving petitioner sitting at the
door. He cannot state accurately the debts of the firm,
as he has not been allowed any acquaintance with the
same by Bliley, but he knows that it owes several hun-
dred dollars. He prayed that Bliley be enjoined from
further proceeding with the business; that a receiver
be appointed to take charge of it to the end that it may
be settled up and the partnership dissolved, and the
rights of the parties adjusted; that he be paid the $600
which he put into the business, and the note which
he executed be delivered up to him and cancelled, and
Bliley be enjoined from selling it; that if there are any
profits in the business, he be given his part of them
under the contract, etc. The contract attached as an
exhibit was, that in consideration of $1,267.45, $600 of
that sum cash in hand, and the balance to be paid in
twelve months from date (as evidenced by note of even
date with the contract, signed by Taylor and Mrs. Tay-
lor), Bliley conveyed conditionally to Taylor one half
undivided interest in the property specified in a schedule
which followed, the title to said undivided half-interest
to remain in Bliley until the balance of the considera-
tion should be fully paid, and then to vest absolutely
in Taylor. It is further stated that the parties had
that day formed a partnership to conduct the under-
taker's business under the name of Bliley & Taylor;
the profits of said business to be equally divided between
them. The schedule referred to contained a list of
the articles in the undertaking outfit. By amendment
petitioner charged that since he filed his petition, he

had learned that Bliley had mortgaged the partnership property for $550, and had also ascertained that Bliley gave in his entire property for taxation at $1,600, which amount is much less than petitioner thought it was worth, and might be covered by a homestead; that since he filed the petition, Bliley had told him that he should not have a cent of the money that he put into the firm, nor should he have anything for his services, and that when the property was brought to sale he intended to see that it did not bring enough to pay him anything; that Bliley peremptorily and insolently orders him out of the store and tells him that he shall not come into it, so that to keep the peace he has for several days remained away, thus necessarily leaving everything in the hands of a man whom he believes to be totally unscrupulous; that he feels warranted in this latter statement, because he is credibly informed that, in severing his connection with a firm in the same business, Bliley cut out the leaves of a book on which his individual account appeared.

Bliley answered as follows: Some weeks before the partnership was formed, Taylor and his mother importuned him to take Taylor in his business as a partner, assuring him that Taylor would devote his whole time and energy to the business and would do all he could to make it a success. He finally agreed to sell Taylor a half-interest in the property and admit him as a partner upon the terms contained in the agreement referred to in the petition. Respondent has faithfully attended to the business and devoted his whole time to it, but Taylor has been a detriment rather than a help, by reason of his neglect and his actions in and around the place of business. Taylor has been almost continuously under the influence of whiskey or some other intoxicant, since the 22d of January, 1890; at times he would get drunk and absent himself from the place of

business for days at a time, and respondent would not know where he was and would have the whole care of the business on himself. When Taylor was drinking, he made himself very disagreeable by using profane language in the place of business, and would often sit in front of it in a semi-stupor or sleep, and be anything but an attractive or profitable advertisement, so that respondent's friends would call his attention to Taylor's condition and suggest that it would be better if Taylor would retire from sight. He from time to time remonstrated with Taylor and felt constrained to ask him to please not sit in front when under the influence of liquor, and often asked him to go into the back room and lie down until he got more sober. Notwithstanding all this, as the partnership has been entered into for twelve months, he feels it his duty to carry out the agreement in good faith. It is not true that he denies Taylor access to the books or considers the business as his exclusively; the books are kept in the place of business at a place of which Taylor is aware, and respondent does not try to conceal them from him or exercise any more dominion over them than is necessary to take proper care of them. It is untrue that he refused to talk about the business of the firm, except when Taylor was under the influence of liquor. He never intended to insult Taylor, and when he remonstrated with him he only desired that Taylor might do better, and the business should appear to be in respectable hands. The persons who have patronized the firm are almost exclusively respondent's friends. Taylor was away from and neglected the business so much, and was under the influence of liquor so much of the time, that respondent felt it was necessary to look after the details of the business, see that accounts were collected, bills paid, etc.; and in doing so he did not attempt to prohibit Taylor from doing the same. There is a suit

pending against respondent as a tenant holding over, but he has interposed his defence and is advised that it is a good one. The firm is indebted, but the amounts due it are about equal to its indebtedness. The income has not been sufficient to pay the expenses of the business, and he has paid out of his own pocket money to satisfy firm indebtedness, so that the firm is indebted to him while Taylor is indebted to the firm, and there are no profits in his hands to which Taylor is entitled. The firm is solvent, its assets being sufficient to pay all its indebtedness. If respondent ever gets the balance of the purchase money represented by Taylor's note, it will be by sale of the property mentioned in the agreement, or out of the profits of the business, as Taylor is insolvent. He did, a few days before, lock the door of their place of business while petitioner was sitting close by, but he did this because there was a corpse lying in the place of business, and he felt it was not safe and proper to leave the door open, knowing that he could not trust Taylor by reason of Taylor's habits, but Taylor had a key to the door and could go in if he wished to. Taylor is welcome to exercise such dominion over the books and over the firm as a partner is entitled to, and respondent will not try to prevent him. The appointment of a receiver would be disastrous to respondent, because Taylor still owes the note. The agreement with Taylor was that his mother was to sign the note, and she has never done it. If the property should be sold at receiver's sale, it would be sacrificed, and Taylor's portion, if he were entitled to any portion of the proceeds, would not be sufficient to pay the note. When respondent purchased his outfit to run his undertaking business, he gave a mortgage to secure the payment of the purchase money to L. H. Hall & Co., and after he gave it, continued to run an account with Hall & Co.; and when

he formed the partnership with Taylor, he owed Hall &
,Co. about $550 on the account; and about three
months after the partnership was formed, in a settle-
ment with Hall & Co., he took up the mortgage and
renewed it for $550. He knew his interest in the
property was ample to pay the $550, and acted in per-
fect good faith towards Taylor. He had plenty of
property to pay his debts, and the mortgage is due
when Taylor's note is due, the mortgage being given
on the belief that Taylor's note would pay the debt;
and Hall & Co. were informed of respondent's plans
and assented to them. Respondent was a member
of the firm of D. G. Wylie & Co., and when he
was about to sever his connection with that firm, he
rendered his account; and there being dissatisfaction
about the account, the books of that firm were exam-
ined by two persons, each of whom reported that the
firm owed respondent more than respondent claimed at
first, and on the last report a settlement was made, and
he left the firm. He does not remember to have taken
the leaves on which his individual account appeared,
but after this settlement was made he had a perfect
right to them. He is amply solvent and intends to
carry out the agreement between him and Taylor; the
appointment of a receiver would be very hurtful to his
business reputation, etc., etc.

On the hearing of the application for injunction and
receiver, the evidence for the petitioner tended to show
that the manner of Bliley towards Taylor was fre-
quently gruff and insulting and unpleasant; that Tay-
lor was closely attentive to his business, sober, and at
his place of business, and always pleasant and forbear-
ing; that he had never been so intoxicated as to in-
capacitate him for business while he was a partner with
Bliley; that the allegations in Bliley's answer to the
effect that he was so intoxicated, and similar allegations,

were false; that Bliley represented to him that there was no incumbrance upon the property, and that the firm owed no debts; that in winding up the business of D. G. Wylie & Co., the leaves containing the individual account of Bliley had been cut out from the book in which the account appeared; that Taylor, on May 15, 1890, served Bliley with a written notice to dissolve the partnership; and that at times Bliley was morose and hard to get along with, and at other times pleasant; he had been known to be absent from the place of business frequently, and to have refused to give Taylor money.

The testimony for the defendant tended to show that he was always present at the place of business and attentive to the same, while Taylor was seldom present, but was frequently drunk or under the influence of liquor, and was often absent when defendant required his assistance in the preparation of coffins, etc., and was often seen sitting in front of the place of business evidently under the influence of liquor, while defendant is steady, industrious, sober and of unimpeachable character; that the books of the firm were always accessible to Taylor; that he had been heard to refuse defendant's request to assist him in the business, saying that he was not going to have a damned thing to do with it and was going to get out of the business any way; that he returned no property for taxation for 1889 or 1890; that defendant refused to let him have money on the occasion above referred to, because he was under the influence of liquor and wanted to bet on a horse-race; that defendant always treated him kindly and with extra patience and consideration; and that the defendant was the one to whom bills for carriages to attend funerals were presented, and by whom they were paid. The witness who had testified for Taylor as to the missing leaves containing Bliley's individual ac-

v 86-11

count with Wylie & Co., testified that he signed the affidavit for Taylor's counsel without sufficient consideration, and now says that when Bliley went out of the firm of Wylie & Co. he rendered his account for a certain sum, and Wylie was dissatisfied, and deponent then went over the same and rendered Bliley's account for more than Bliley had, and then another person named ran over the books and rendered Bliley's account for more than deponent had, and the settlement with Bliley was made on the basis of the latter report; that deponent does not pretend to say who cut out the leaves of the book; that Bliley, like other men, is not so pleasant at some times as at others when not worried, and is an average man in this respect; and that deponent regards him, from business acquaintance and experience, as a man of integrity and strictly honest.

The judge denied the prayer for injunction and receiver, on the ground that the title to the property described in the contract was in the defendant, and that this being true, there was nothing in the facts shown in evidence to authorize the granting of an injunction and the appointment of a receiver. The plaintiff excepted.

P. L. Mynatt & Son, for plaintiff.

O'Neill & Frazer, by brief, for defendant.

Simmons, Justice.

The facts will be found in the official report. Under these facts, we think the trial judge erred in refusing an injunction for the reasons set out in his judgment. That judgment is based upon the idea that the title to the property described in the contract was in the defendant, and that the plaintiff, therefore, was not entitled to an injunction or the appointment of a receiver. We differ from the learned judge upon this question. Under the facts, we think that the plaintiff had sufficient

interest in the property to authorize him to file the bill and have an injunction and receiver, if there was no other difficulty in the way. He had paid about half the price of the property which had been delivered to him as a partner, and the partnership had gone into operation. While Bliley may have had the legal title to the property, Taylor had such an equitable interest as would authorize him to retain it in his possession, especially when the notes for the purchase money which Taylor had given to Bliley for the other half had not become due. If Bliley had sold the property to Taylor individually and delivered it to him, Taylor certainly could have held it against Bliley until he had refused to pay the balance of the purchase money. As the trial judge put his judgment upon an erroneous construction of the contract, and did not exercise his discretion upon the merits of the case, we reverse the judgment and direct that the plaintiff, if he sees proper, may apply again to the judge and have him exercise his discretion upon the merits of the case.

*Judgment reversed.*